## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEFFREY ALLEN TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-55-G** |
| | ) | |
| **COMANCHE COUNTY** | ) | |
| **FACILITIES AUTHORITY et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Plaintiff Jeffrey Allen Taylor brings this action under 42 U.S.C. § 1983, alleging that, while he was a pretrial detainee at the Comanche County Detention Center ("CCDC"), Defendants[1] violated his constitutional rights by failing to protect him from being assaulted by another inmate. This matter was referred to United States Magistrate Judge Suzanne Mitchell in accordance with 28 U.S.C. § 636(b)(1).

On March 9, 2020, Judge Mitchell issued a Report and Recommendation ("R. & R.," Doc. No. 65) in which she recommended that Defendants' Motion for Summary Judgment (Doc. No. 54) be granted.[2] Plaintiff submitted an Objection (Doc. No. 76)[3] to the findings and conclusions of the R. & R., to which Defendants replied (Doc. No. 81).

---

[1] The defendants are Comanche County Facilities Authority ("CCFA") and William Hobbs, both individually and in his official capacity as the Administrator of CCDC. *See* Am. Compl. (Doc. No. 18) ¶ 1; Pl.'s Stip. (Doc. No. 19).

[2] Plaintiff filed a Response to that Motion (Doc. No. 57), to which Defendants replied (Doc. No. 60).

[3] Although Plaintiff's Objection fails to comply with the Local Civil Rules, the Court has considered the document as though properly filed. *See* LCvR 5.2(a), 7.1(d), 7.1(e).

Pursuant to governing authority, the Court reviews de novo the portions of the R. & R. to which specific objections have been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Having conducted this de novo review, the Court finds as follows.

## I.   Background

As outlined in the R. & R., Plaintiff's claims arise from an attack he suffered on June 8, 2017, when Plaintiff was a pretrial detainee housed at CCDC. In the incident, an inmate named Gregg Stanga attacked Plaintiff from behind while Plaintiff was picking up food trays in Mr. Stanga's jail pod in the course of Plaintiff's jail-trustee duties. Mr. Stanga stabbed Plaintiff in the neck with a metal shank, and the two struggled on the floor for about 90 seconds. A CCDC officer who was present called for backup and ordered the other inmates to lock down but did not physically intervene. Two other CCDC officers eventually came to assist. Plaintiff sustained a broken leg, as well as a puncture wound in his neck, and left the pod in a wheelchair.

In the R. & R., Judge Mitchell addressed relevant facts, Plaintiff's allegations, and the applicable standards of review. Judge Mitchell concluded that Defendant Hobbs was entitled to summary judgment on the failure-to-protect claim raised against him in his individual capacity as a supervisor at CCDC because Plaintiff had failed to show an "affirmative link" between the attack and any action or inaction of Defendant Hobbs. *See* R. & R. at 8-12; *see also Cox v. Glanz*, 800 F.3d 1231, 1248-49 (10th Cir. 2015). Judge Mitchell also determined that Defendant Hobbs was entitled to qualified immunity on this individual-capacity claim. *See* R. & R. at 12-13; *Cox*, 800 F.3d at 1246-47. As for the

claim against Defendant CCFA,[4] Judge Mitchell found that Plaintiff had not shown "that CCFA had any policy or custom that could provide a direct causal link [to] . . . Stanga's unexpected attack on Plaintiff." R. & R. at 14. Accordingly, Judge Mitchell recommended that summary judgment be granted to Defendants on all claims.

## II.     Summary Judgment

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant must cite specific evidence sufficient to show that a genuine issue remains for trial. *See Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

---

[4] As referenced by Judge Mitchell, Plaintiff's claim against Defendant Hobbs in his official capacity as Administrator is duplicative of Plaintiff's claim against Defendant CCFA. *See* R. & R. at 2 n.2; *Thompson v. Smith*, No. CIV-08-255-FHS, 2009 WL 4912162, at *8 n. 11 (E.D. Okla. Dec. 11, 2009); *see also Blueberry v. Comanche Cnty. Facilities Auth.*, 672 F. App'x 814, 816 (10th Cir. 2016) (describing the administrator as "the final policymaker for the CCDC"). Accordingly, the Court refers to these collectively as a claim raised against Defendant CCFA.

other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

### III.    Section 1983 Claims and the Deliberate Indifference Standard

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants challenge whether Plaintiff can show that, in acting under color of law, Defendants "'subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of his lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (omission and internal quotation marks omitted).

Because Plaintiff was a pretrial detainee at the time of the incident, "the Due Process Clause of the Fourteenth Amendment governs." *Turner v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 804 F. App'x 921, 925 (10th Cir. 2020) (citing *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019)). "In evaluating such Fourteenth Amendment claims, we apply an

analysis identical to that applied in Eighth Amendment cases." *Burke*, 935 F.3d at 991 (internal quotation marks omitted).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

> The "deliberate indifference standard has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Burke*, 935 F.3d at 992 (internal quotation marks omitted). For the subjective component, the plaintiff must "show the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation and internal quotation marks omitted).
>
> Prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners. *See Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm, in other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (brackets and internal quotation marks omitted), cert. denied, ─── U.S. ───, 139 S. Ct. 800, 202 L.Ed.2d 589 (2019).

*Turner*, 804 F. App'x at 925 (alterations omitted).

IV.   *Discussion*

Plaintiff in his Objection largely repeats the arguments already raised and rejected by Judge Mitchell in the R. & R. and does not challenge Judge Mitchell's characterization of the legal claims or the applicable standards of review. The Court herein addresses only those objections that are "sufficiently specific" to preserve the relevant disputed issues for de novo review. *2121 E. 30th St.*, 73 F.3d at 1059; *see also Marshall v. Chater*, 75 F.3d

1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

### A.  *Plaintiff's Individual-Capacity Claim Against Defendant Hobbs*

Plaintiff argues that Defendant Hobbs should be held liable for Mr. Stanga's attack based upon Defendant Hobbs' supervisory status at CCDC.  Defendant Hobbs' duties at CCDC "include overseeing the hiring, training and management of Detention Officers and maintaining the day-to-day operations of the CCDC."  Hobbs Decl. ¶ 4 (Doc. No. 54-3).

Defendant Hobbs cannot be held liable under § 1983 on a theory of respondeat superior.  Rather, "[a] plaintiff arguing for the imposition of supervisory liability . . . must show an 'affirmative link' between the supervisor and the constitutional violation.  The requisite showing of an 'affirmative link' . . . has come to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Cox*, 800 F.3d at 1248 (alteration, citation, and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff argues that this affirmative link between Defendant Hobbs and the attack of June 8, 2017, can be established through two bases of liability.  First, Plaintiff contends that Defendant Hobbs should have been aware "of the increased risk of an incident" between Plaintiff and Mr. Stanga as a result of events that had transpired between those inmates, including a verbal exchange preceding the attack.  Pl.'s Obj. at 13.  Second, Plaintiff contends that an affirmative link between Defendant Hobbs and the attack can be

shown from Defendant Hobbs' "direct, actual ongoing knowledge of constitutional deprivations" and ongoing facility and personnel deficiencies at CCDC. *Id.* at 10-12, 13-20.

### 1. *Substantial Risk to Plaintiff from Mr. Stanga*

As to the first argument, Plaintiff cannot show that Defendant Hobbs knew of and disregarded a "substantial risk of harm" related to or created by Mr. Stanga, as required to establish Defendant Hobbs' "culpable state of mind" and "establish a violation under the subjective element of deliberate indifference." *Turner*, 804 F. App'x at 926; *Cox*, 800 F.3d at 1248 (internal quotation marks omitted). Defendant Hobbs had not received any complaint from Plaintiff, there had been no report to Defendant Hobbs of Mr. Stanga "attack[ing] any other CCDC inmate or staff," and Defendant Hobbs was not personally involved in the June 2017 incident. Hobbs Decl. ¶¶ 9-10. Further, Plaintiff and Mr. Stanga had lived in the same housing unit for a time and had not had any problems with each other prior to June 8, 2017. Defs.' Mot. Ex. 4 (Doc. No. 55-2); *id.* Ex. 5 (Doc. No. 55-3); Pl.'s Dep. 160:11-13 (Doc. No. 54-2); *see also id.* at 160:14-15 (Plaintiff testifying that he was "[v]ery" surprised when Mr. Stanga attacked him). Accordingly, "a reasonable jury could not find that [Defendant Hobbs] was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed" to Plaintiff from Mr. Stanga "and that [Defendant Hobbs] actually drew the inference." *Turner*, 804 F. App'x at 926 ("[O]fficials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." (internal quotation marks omitted)).

## 2. Conditions of Confinement

Plaintiff's attempt to impose supervisory liability upon Defendant Hobbs in his individual capacity based upon conditions of confinement at CCDC also fails. As noted in the R. & R., Plaintiff attempts to prove this affirmative link by pointing to "allegedly overcrowded conditions," "the alleged presence of weapons in the facility," "the alleged lack of enough detention officers," "the detention officers' lack of better offensive weapons," "alleged insufficient training for detention officers," and "the alleged existence of a policy or custom to allow inmates to disobey rules." R. & R. at 9 (citing Am. Compl. ¶ 13; Pl.'s Resp. at 22-23).

Judge Mitchell thoroughly addressed this argument, explaining how Plaintiff's contentions and evidence regarding the conditions at the jail and the detention officers' training failed to show that "Defendant Hobbs was subjectively, deliberately indifferent." R. & R. at 10-12; *see also Cox*, 800 F.3d at 1248; *Dodds v. Richardson*, 614 F.3d 1185, 1195-96, 1199 (10th Cir. 2010) ("A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating . . . the defendant . . . acted with the state of mind required to establish the alleged constitutional deprivation."). Plaintiff's Objection does not evince error in this finding, as it fails to point to any evidence proving that Defendant Hobbs himself "drew the inference" that a substantial risk of serious harm from an inmate attack existed by virtue of the conditions at CCDC at the time of the attack or "disregarded" that excessive risk despite this awareness. *Turner*, 804 F. App'x at 926; *see Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("An official's failure to alleviate a significant risk of which he was unaware, no matter . . . how gross his negligence in failing to perceive

it, is not an infliction of punishment and therefore not a constitutional violation.").  The fact that several other jail employees later testified, with little to no detail or documentary support, as to overcrowding issues and previous inmate altercations does not show that these conditions presented, in June 2017, such an "obvious" risk of "almost inevitabl[e]" relevant constitutional harm that Defendant Hobbs' personal knowledge can be inferred. *Tafoya*, 516 F.3d at 916-17; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see* Pl.'s Obj. at 3; *Farmer*, 511 U.S. at 842 (noting that such an inference could be supported by "evidence showing that a substantial risk of inmate risks was longstanding, pervasive, well-documented or expressly noted by prison officials in the past" and "circumstances suggest[ing] that the defendant-official . . . 'must have known' about it" (internal quotation marks omitted)); *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (finding that sheriff was on notice when he admitted that he had been aware of deficiencies in jail staffing and surveillance and had tried to correct them but had not been provided adequate funding to do so), *abrogated on other grounds as recognized in Brown v. Flowers*, 974 F.3d 1178 (10th Cir. 2020).

Having considered the parties' arguments and the record evidence, the Court agrees that because Plaintiff cannot show a genuine issue as to whether Defendant Hobbs acted with a culpable state of mind, Plaintiff cannot show the requisite affirmative link to impose liability upon Defendant Hobbs in his individual capacity based upon the alleged facility conditions and staffing issues.

### 3.   Qualified Immunity

Defendant Hobbs argues that he is entitled to qualified immunity on Plaintiff's individual-capacity claim.   "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

> [W]hen a defendant asserts a qualified-immunity defense at summary judgment, we require the plaintiff "to shoulder" a heavy two-part burden to survive the defendant's assertion.   *Cox*, 800 F.3d at 1245.   First, the plaintiff must demonstrate on the facts alleged . . . that the defendant violated his [or her] constitutional or statutory rights.   Second, the plaintiff must demonstrate that the right was clearly established at the time of the alleged unlawful activity.

*Perry v. Durborow*, 892 F.3d 1116, 1120-21 (10th Cir. 2018) (omission and second alteration in original) (alteration, citation, and internal quotation marks omitted).

Plaintiff's Objection does not offer a reasoned challenge to Judge Mitchell's finding that Defendant Hobbs is entitled to qualified immunity, arguing only that Defendant Hobbs was "ultimately responsible for the operation of the jail" and that Defendant Hobbs is "not entitled to qualified immunity if [he] knew [he] [was] violating a person's constitutional rights."   Pl.'s Obj. at 20-21 (citing *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990)).   Even assuming the right was clearly established, however, as outlined above Plaintiff cannot show on the record before the Court that Defendant Hobbs is liable in his capacity as a supervisor for the alleged constitutional violation.   Accordingly, Plaintiff has failed to shoulder his summary-judgment burden, and Defendant Hobbs is entitled to qualified immunity in his individual capacity.   *See Perry*, 892 F.3d at 1120-21.

### B.  *Plaintiff's Municipal-Liability Claim Against Defendant CCFA*

Plaintiff relies upon the same allegations of deficient conditions—"overcrowding, insufficient and inadequate supervision of inmates, inadequate training, inadequate treatment of detainees and risk of attack by inmates," and "failure to secure inmates"—as a basis for liability against CCFA.[5]  Am. Compl. ¶ 18; *see* Pl.'s Resp. at 29-34.

CCFA is a public trust that owns and operates CCDC.  R. & R. at 2; *see* Am. Compl. ¶ 7; Order of Aug. 31, 2018 (Doc. No. 16) at 2-3.  Such a governmental entity can be held liable under § 1983 under a theory of municipal liability, but the plaintiff "must show that 'the municipality *itself* caused the constitutional violation at issue.'"  *Blueberry*, 672 F. App'x at 816 (alteration omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  The Tenth Circuit has "identified three elements to such a claim: '(1) official policy or custom, (2) causation, and (3) state of mind.'"  *Id.* (quoting *Schneider*, 717 F.3d at 769).

In the R. & R., Judge Mitchell rejected Plaintiff's municipal-liability claim based upon a lack of evidence on the policy-or-custom element and did not address causation or state of mind.  *See* R. & R. at 14 (finding that "Plaintiff has provided no evidence that

---

[5] Contrary to Defendants' suggestion, there is no per se rule "requir[ing] individual officer liability before a municipality can . . . be held liable for damages under *Monell*."  *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010); *see also Cordova v. City of Albuquerque*, No. Civ. 11-806-GBW/ACT, 2013 WL 12040727, at *4 (D.N.M. Feb. 22, 2013).  Indeed, "municipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice, but also finds that no officer is individually liable for the violation."  *Barnett v. MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020), *petition for cert. filed*, No. 20-595 (U.S. Nov. 5, 2020); *accord Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985).

CCFA had any policy or custom that could provide a direct causal link" between the CCFA's action or inaction "and Stanga's unexpected attack on Plaintiff"). Having considered Plaintiff's objections de novo, *see* Pl.'s Obj. at 21-28, the Court finds that Plaintiff has cited evidence sufficient to show a genuine fact issue as to each of the three elements, such that summary judgment is not warranted on the municipal-liability claim.

### 1. Policy or Custom

As outlined by the Tenth Circuit, "[a]n official policy or custom may take many forms, including 'a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.'" *Blueberry*, 672 F. App'x at 816-17 (quoting *Schneider*, 717 F.3d at 770).

Plaintiff contends that CCDC was overcrowded and understaffed at the time of Plaintiff's assault, that there were blind spots in the facility's camera monitoring system, and that inmates routinely ignored rules and commands without meaningful consequences. Plaintiff submits a report by John Boren, who is identified as an expert in "police and corrections practices." *See* Boren R. (Doc. No. 57-6) at 6. Mr. Boren states that CCDC is designed to house 283 inmates but that a February 2017 inspection performed by the Oklahoma Department of Health recorded an inmate population of 322. *See id.* at 15; *accord* Orr Dep. 22:4-23 (Doc. No. 57-4). Detention Officers Isaiah Orr and Matthew Crow likewise testified that overcrowding had been observed at CCDC in the months and weeks leading up to Plaintiff's assault. *See* Orr Dep. 22:4-23, 47:9-21; Crow Dep. 66:17-67:6 (Doc. No. 57-3).

There is also evidence indicating that CCDC—and, more specifically, Pod 254, in which Mr. Stanga attacked Plaintiff—was overcrowded on the day of the attack.  For instance, the pertinent video footage shows a sleeping bunk in the "general area" of Pod 254, which, Mr. Boren explains, is an "unmistakable indicator of over population."  Boren R. at 15; *see* Defs.' Mot. Ex. 10 (Surveillance Video (Doc. No. 56) (conventionally filed) (reflecting a futon-type sleeping bunk and bedding situated on the floor of the small common area, with inmates seated at the tables and also on the steps of the staircase)).  Another indicator of overpopulation, according to Mr. Boren, was Mr. Stanga's ability to smuggle a piece of metal into his cell and use it to fashion a weapon without detection.  *See* Boren R. at 12.  This, he explains, is because overpopulation diminishes the "[q]uality and regular scheduling of cell/facility searches and personal searches," which are the "main tactic[s]" used to control the influx and possession of contraband.  *Id.* (emphasis omitted); *see also* Crow Dep. 57:10-58:15 (testifying that no metal is allowed to inmates at CCDC and admitting that the metal shank used to attack Plaintiff should have been detected and confiscated through regular pat-downs and searches).

Plaintiff also presents evidence through Mr. Boren that CCDC staffing levels were insufficient to maintain a reasonably safe environment for inmates.  Mr. Boren states that "[n]ormal staffing for a shift would be approximately (10) ten [detention] officers," Boren R. at 11, but on the morning of Plaintiff's assault, there were only six detention officers on duty, *see id.*  Of these officers, one (Officer Krewko) was a "new hire" with less than two days' work experience, two were on "fixed duty/post" (meaning they "could not leave their assigned post"), and one was serving as shift commander.  *Id.*  Thus, there were only two

detention officers on duty (Officers Ollison and Browders) with both roving capacity and meaningful "inmate detention/supervision experience." *Id.*; *see also* Crow Dep. 18:15-22 (discounting Officer Krewko's ability to aid in preventing or stopping the assault based on his lack of experience).  One of those officers (Officer Ollison) was present at the onset of the assault, but he was neither equipped with nor qualified to use OC spray (i.e., "pepper spray") or a taser gun.  Boren R. at 11; *see also* Orr Dep. 55:22-56:12; R. & R. at 11.

Based on the foregoing, a jury could reasonably conclude that at the time of the attack, CCDC was overpopulated and understaffed—not only with respect to the raw number of officers on duty, but also with respect to the number of on-duty officers equipped with and qualified to use nonlethal weapons—and that these conditions exposed inmates to a greater risk of serious harm to inmate safety.  *See Savage v. Fallin*, 663 F. App'x 588, 593 (10th Cir. 2016) ("[S]taffing that is insufficient to provide adequate security to inmates and staff may . . . contribute to [an Eighth Amendment] violation."); *cf. Thompson v. Lengerich*, 798 F. App'x 204, 211 (10th Cir. 2019) (reversing dismissal of Eighth Amendment claim based on allegations of overcrowding and understaffing where prisoner alleged that "staff responses to inmate fights ha[d] been delayed, leaving inmates injured").

With respect to inmate surveillance, Lieutenant Crow testified that there were "lot[s] of blind spots" in CCDC's video-camera monitoring system (i.e., areas that are not visible to the facility's master control) and that the existence and location of such blind spots were common knowledge among CCDC staff and likely known to inmates as well.  Crow Dep. 59:10-60:5.  Officer Browders testified that one such blind spot was in the entryway of Pod 254.  *See* Browders Dep. 40:22-25; *see also* Surveillance Video (indicating that Mr. Stanga

was hiding within this blind spot and waiting to jump on Plaintiff before their fight moved into the center of the common area).  A jury could reasonably conclude that the limited nature of CCDC's surveillance system, together with officials' tolerance of camera blind spots, increased the potential for and severity of inmate-on-inmate violence, thereby exposing inmates to a substantial risk of serious harm.  *Cf. Blueberry*, 672 F. App'x at 818 (affirming grant of summary judgment to CCFA where inmates made no showing that CCFA was aware of the CCDC blind spots before the incidents alleged and CCFA installed additional security cameras after the incidents were reported); *Henderson v. Glanz*, No. 12-CV-68-JED-FHM, 2012 WL 5931546, at *1-2, *3-4 (N.D. Okla. Nov. 27, 2012) (denying dismissal of a failure-to-protect claim where plaintiff alleged that prison officials had failed to ensure that "known 'blind spots'" "were adequately supervised and secured").

Plaintiff has also submitted testimony supporting his assertion that Defendants fostered a "culture of allowing inmates to . . . ignore small rule[s] or commands."  Pl.'s Resp. at 7.  Officer Browders testified that inmates were not punished for ignoring rules or commands from detention officers and that officers often get "cussed out" by inmates when they attempt to enforce rules.  Browders Dep. 79:3-10, 91:10-17.  Officer Crow similarly testified that inmate disobedience is a daily occurrence at CCDC and that the inmates' defiance is largely "tolerated" by CCDC staff and administration.  Crow Dep. 43:8-44:4.  Relatedly, there is testimony in the record to the effect that physical fights between inmates occurred with some degree of regularity at CCDC.  Browders Dep. 48:15-49:23, 50:2-10; Crow Dep. 53:16-54:4; *see also* Boren R. at 18 (stating that inmate violence is a "recurring event" at CCDC).  A jury could reasonably infer that such insubordination and violence is

attributable, at least in part, to the deficiencies summarized above, and that Plaintiff faced a substantial risk of serious harm in a jail environment where inmates are permitted to flout basic rules and commands. *See Lopez*, 172 F.3d at 761 (holding that evidence including "at least one prior attack at the jail" was sufficient to show the existence of a substantial risk of harm due to understaffing and insufficient monitoring of inmates).

### 2.  Causation

To prove causation, Plaintiff must establish that the challenged policy or practice is "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (internal quotation marks omitted).  "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.* (internal quotation marks omitted).

While a close question, the record when construed in Plaintiff's favor reflects a genuine dispute as to whether the conditions and customs cited above, and Defendant CCFA's failure to correct those deficiencies, were the moving force behind the alleged violation of Plaintiff's constitutional rights.

Officer Browders testified that she witnessed a verbal altercation between Plaintiff and Mr. Stanga on the morning of June 8, 2017, prior to the incident, but did not have an opportunity to report it because she was summoned to another floor.  Browders Dep. 27:19-28:5.  There is also testimony indicating that the attack could have been prevented by locking down Pod 254 prior to a trustee distributing and collecting meal trays but that a lockdown would have been impracticable due to the disproportionate inmate-to-officer

ratio.  *See* Orr Dep. 30:17-31:10, 57:6-9; Browders Dep. 48:1-5, 78:24-79:15.  The evidence further reasonably supports a finding that understaffing, overpopulation, and/or blind spots in the facility's camera monitoring system furnished the occasion for Mr. Stanga to smuggle another inmate's knee brace into Pod 254 and use it to create an improvised weapon.  *See* Crow Dep. 59:10-60:5; Browders Dep. 40:22-25; Boren R. at 12. From this testimony, a jury could reasonably infer that additional staffing at CCDC would have enabled Officer Browders to report the altercation to her superior, allowing measures to be taken to prevent further interaction between Plaintiff and Mr. Stanga, and that more officers, fewer inmates, and better monitoring would have hindered Mr. Stanga's ability to plan and carry out the attack.

Mr. Boren opines that the attack could have been prevented if Officer Ollison had been equipped with OC spray because "the mere presence of an officer equipped and trained to deploy and properly use [OC] spray" is enough to deter inmates from engaging in violent conduct.  *See* Boren R. at 13 (emphasis omitted).  Were a jury to credit Mr. Boren's opinion on this matter, it might reasonably conclude that the assault was "closely related" to Defendant CCFA's failure to equip its officers with OC spray or similar nonlethal weapons.  *Schneider*, 717 F.3d at 770.  Officer Browders further testified that, had Officer Ollison been equipped with (and trained to use) OC spray, he would have been justified under the circumstances to deploy it in an effort to subdue Mr. Stanga and prevent further harm to Plaintiff.  Browders Dep. 45:23-46:17.  Officer Browders also testified that the presence of just one additional officer would have enabled her, along with Officers Ollison and Krewko, to safely intervene in the assault.  *Id.* at 63:12-24; *cf. Lopez*, 172 F.3d

17

at 761 (pointing to jailer's testimony "that the jail was woefully understaffed" as support for the plaintiff's failure-to-protect claim premised upon inadequate conditions); *Savage*, 663 F. App'x at 592-93 (reversing dismissal of prisoner's claim of "an unreasonable risk of physical assault" where he alleged that "prison officials have made statements acknowledging a link between staffing shortages and a high risk of prison violence").

It is undisputed that, while the assault was in progress, some inmates in Pod 254 refused to comply with Officer Ollison's order to lock down and return to their cells.  *See* Defs.' Mot. at 11, 31; Pl.'s Resp. at 9; Surveillance Video (reflecting multiple inmates milling about in the common area during and after the fight); *see also* Defs.' Mot. Ex. 8 (Incident Report (Doc. No. 55-4) at 2).  As noted above, Officer Browders and Officer Crow testified regarding officers' allowing of inmate disobedience and violation of facility rules.  *See* Browders Dep. 79:3-10, 91:10-17; Crow Dep. 43:8-44:4.  Such testimony is consistent with Plaintiff's theory that such noncompliance is attributable to Defendant CCFA's "policy or custom of . . . allow[ing] inmates to get by with not following small rules."  Pl.'s Resp. at 16; *see also id.* at 7.

Plaintiff therefore has identified sufficient evidence to create a material fact issue as to whether conditions permitted by Defendant CCFA to exist at CCDC "set in motion a series of events" that caused his constitutional injury.  *Schneider*, 717 F.3d at 768 (internal quotation marks omitted); *see Winton v. Bd. of Comm'rs of Tulsa Cnty.*, 88 F. Supp. 2d 1247, 1268 (N.D. Okla. 2000) ("A jury could find that overcrowding, under-staffing, lack of adequate inmate supervision, lack of inmate segregation and classification, lack of inmate exercise time, dormitory-style housing, all of which existed over a long period of

time, were all *de facto* policies of inaction by the County which created and or contributed to the conditions which created a serious risk of harm in the Jail.").

>    3. *State of Mind*

With respect to state of mind, "to show that a facially lawful municipal action has led an employee to violate a plaintiff's rights, the plaintiff must show that the action was taken with deliberate indifference as to its known or obvious consequences." *Blueberry*, 672 F. App'x at 817 (internal quotation marks omitted); *see also Turner*, 804 F. App'x at 925.

>    The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Schneider*, 717 F.3d at 771 (alteration and internal quotation marks omitted).

The record before the Court allows a reasonable inference that the alleged conditions and attendant risks to inmate safety were known to CCDC staff and administrators.  *See, e.g.*, Orr Dep. 22:4-23, 27:10-29:5, 48:9-25; Crow Dep. 48:4-7, 53:16-54:4, 59:10-60:5, 66:17-67:6; Browders Dep. 40:22-25, 48:15-49:23, 50:2-10, 63:12-24, 78:9-17; Boren R. at 18.  Based on this evidence, there is a genuine dispute as to whether CCFA, as the entity responsible for operating the jail, knew about the complained-of conditions (i.e., overcrowding, understaffing, insufficient camera monitoring, and institutional tolerance of inmate disobedience), knew such conditions posed a substantial

risk of serious harm to inmates, and nonetheless neglected to take any ameliorative action. *Cf. Burke*, 935 F.3d at 1000 (evidence showing defendant knew about, yet failed to correct, deficiencies in medical care provided to inmates "would permit a reasonable jury to find he was deliberately indifferent to the risk that poor care would result in [the plaintiff's] constitutional injury").

Defendants, for their part, do not directly dispute the cited instances where CCDC exceeded its inmate capacity or the CCDC officers' testimony regarding the allegedly deficient jail conditions, emphasizing instead that Plaintiff does not cite a specific incident "similar to the attack on Plaintiff." Defs.' R. & R. Reply at 14, 18-19.  Defendant Hobbs' signed declaration is silent as to Plaintiff's conditions-of-confinement allegations, instead focusing upon the training protocols and written policies that apply to the facility, as well as the training of the specific officers present at the incident.  *See* Hobbs Decl. ¶¶ 5-8, 12. But a governmental entity can be held liable for its actions and inaction (e.g., "permitting conditions" that precipitate an inmate attack or failing "to adequately train and supervise the detention officers on duty") even if the entity's official policy "is not unlawful on its face." *Winton*, 88 F. Supp. 2d at 1263; *accord Schneider*, 717 F.3d at 770.  Nor do Defendants contend that Defendant CCFA "tried to correct the deficiencies but was hindered" by circumstances beyond its control, such as a lack of funding. *Lopez*, 172 F.3d at 762 n.4 (noting that a sheriff could have possibly defeated individual liability for unconstitutional jail conditions if he had shown "that monetary restraints . . . frustrated his good faith efforts to correct the improper conditions").

Considered in the light most favorable to Plaintiff, the evidence in the record is

sufficient to create a material fact issue as to whether Defendant CCFA was deliberately indifferent to an excessive risk to inmate safety and to the obvious consequences of its conduct in operating CCDC in this regard.

### 4. Conclusion

In sum, a jury could conclude from the evidence before the Court that Defendant CCFA was or should have been aware of a significant risk of harm to inmate safety at CCDC, that Defendant CCFA "failed to take reasonable steps to abate the risk," and that Defendant CCFA's "policy of no or ineffective action was the moving force behind the conditions which created the risk of harm in the first place." *Winton*, 88 F. Supp. 2d at 1268-69; *see also Lopez*, 172 F.3d at 763-64. Defendant CCFA is therefore not entitled to summary judgment on Plaintiff's municipal-liability failure-to-protect claim.

### C. Punitive Damages

Finally, Defendants seek summary judgment with respect to any claim by Plaintiff to recover punitive damages against Defendant CCFA and Defendant Hobbs in his official capacity. *See* Defs.' Mot. at 37; Am. Compl. ¶ 15. The Court agrees that Plaintiff may not recover punitive damages against these Defendants and grants summary judgment in that regard. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.").[6]

---

[6] The Court notes that in a 2003 decision the Tenth Circuit found that the district court had erred "in preventing the jury from considering the imposition of punitive damages" against a government employee sued in her official capacity. *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (10th Cir. 2003). This aspect of *Youren* has not been overturned but has repeatedly "been called into question by lower courts," *Estep v. City of Del City ex rel. Del City Police Dep't*, No. CIV-17-625-M, 2018 WL 1598674, at *4 (W.D. Okla. Mar. 30,

CONCLUSION

For the reasons outlined herein, the Report and Recommendation (Doc. No. 65) is ADOPTED IN PART and DECLINED IN PART.  Specifically:

(1) Defendants' Motion for Summary Judgment (Doc. No. 54) is GRANTED with respect to Plaintiff Jeffrey Allen Taylor's failure-to-protect claim raised against Defendant William Hobbs in his individual capacity and with respect to Plaintiff's claim for punitive damages; and

(2) Defendants' Motion for Summary Judgment is DENIED as to the failure-to-protect claim raised against Defendant Comanche County Facilities Authority.

This matter is re-referred to Magistrate Judge Suzanne Mitchell for completion of the remaining pretrial deadlines.

IT IS SO ORDERED this 25th day of November, 2020.

CHARLES B. GOODWIN
United States District Judge

---

2018), and by the Tenth Circuit itself.  *See Cross Continent Dev., LLC v. Town of Akron*, 548 F. App'x 524, 531 (10th Cir. 2013) (characterizing *Youren* as "an anomalous outlier" and reasoning that if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, and a municipality is immune from punitive damages under 42 U.S.C. § 1983, then individuals sued in their official capacity should be immune from punitive damages as well" (internal quotation marks omitted)).  This Court and others have dismissed redundant official-capacity claims on § 1983 suits despite *Youren*'s anomalous holding.  *See, e.g.*, *Morris v. Humphrey*, No. CIV-14-497-W, 2014 WL 3451033, at *1 n.3 (W.D. Okla. July 11, 2014); *Cooper v. Cagle*, No. CIV-06-881-C, 2007 WL 2840385, at *3 (W.D. Okla. Sept. 27, 2007).